IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WRIGHT'S IP HOLDINGS LLC | § § | |
| PLAINTIFF, | § § | CIVIL ACTION NO. |
| V. | § § | JURY TRIAL DEMANDED |
| TRENDSETTER ENGINEERING, INC. | § § § | |
| DEFENDANT. | § § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Wright's IP Holdings LLC (hereafter, "Plaintiff" or "Wright's"), brings this action against Defendant Trendsetter Engineering, Inc. (hereafter, "Defendant" or "Trendsetter") and through this Original Complaint shows the following:

### I.   THE PARTIES

1. Plaintiff, Wright's IP Holdings LLC, is a limited liability company with a principal place of business located at 11125 Sunset Ave., Magnolia, Texas.

2. Trendsetter Engineering, Inc. is a Texas corporation, having a principal place of business at 10430 Rodgers Road, Houston, Texas 77070. Trendsetter may be served with process through its registered agent, Mario R. Lugo, at 10430 Rodgers Road, Houston, Texas 77070.

### II.   JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, Title 35, Section 1, *et. seq*. of the United States Code. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This court has personal jurisdiction over Defendant. On information and belief, Defendant, either directly or indirectly, is violating 35 U.S.C. § 271(a), (b), and/or (c), by making, using, selling, or offering to sell products in this judicial district that infringe the patents-in-suit, as identified below.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b). Trendsetter has committed acts of infringement in this District. In addition, Defendant has established a regular place of business in this District, located at 10430 Rodgers Rd, Houston, Texas, 77070.

### III.   FACTS

6. Plaintiff, Wright's, is the owner of the United States Patent No. 9,284,808 ("the '808 patent"), titled "CHEMICAL DEEPWATER STIMULATION SYSTEMS AND METHODS." A true and correct copy of the '808 patent, issued by the United States Patent and Trademark Office on March 15, 2016, is attached hereto as Exhibit A.

7. Plaintiff, Wright's, is the owner of the United States Patent No. 10,053,942 ("the '942 patent"), titled "CHEMICAL DEEPWATER STIMULATION SYSTEMS AND METHODS." A true and correct copy of the '942 patent, issued by the United States Patent and Trademark Office on August 21, 2018, is attached hereto as Exhibit B.

8. Plaintiff, Wright's, is the owner of the United States Patent No. 10,689,934 ("the '934 patent"), titled "CHEMICAL DEEPWATER STIMULATION SYSTEMS AND METHODS." A true and correct copy of the '934 patent, issued by the United States Patent and Trademark Office on June 23, 2020, is attached hereto as Exhibit C.

9. Collectively, the '808 patent, the '942 patent, and the '934 patent are referred to as the "Stimulation Patents."

10. Plaintiff, Wright's, is the owner of the United States Patent No. 9,435,185 ("the '185 patent"), titled "SUBSEA TECHNIQUE FOR PROMOTING FLUID FLOW." A true and correct copy of the '185 patent, issued by the United States Patent and Trademark Office on September 6, 2016, is attached hereto as Exhibit D.

11. Plaintiff, Wright's, is the owner of the United States Patent No. 10,161,238 ("the '238 patent"), titled "SUBSEA TECHNIQUE FOR PROMOTING FLUID FLOW." A true and correct copy of the '238 patent, issued by the United States Patent and Trademark Office on December 25, 2018, is attached hereto as Exhibit E.

12. Collectively, the '185 patent and the '238 patent are referred to as the "Hydrate Patents."

13. The Stimulation Patents and the Hydrate Patents are collectively referred to as the "patents-in-suit." Pursuant to 35 U.S.C. § 282, the patents-in-suit are presumed valid and enforceable.

14. Defendant is not licensed to the patents-in-suit, either expressly or implicitly, nor does Defendant benefit from any rights in or to the patents-in-suit.

**TRENDSETTER'S DIRECT AND INDIRECT INFRINGEMENT OF THE STIMULATION PATENTS**

15. The Stimulation Patents generally relate to systems usable for performing operations on a well that include a conduit (*e.g.*, a central conduit in communication with a wellbore) having an upper section and a lower section. A first flow control device, such as a barrier valve or other similar types of valves (*e.g.*, ball valves or hydraulic valves), regulators, and/or devices usable to limit, divert, or prevent the flow of fluid, can be positioned between the upper and lower sections of the conduit. Similarly, a second flow control device can be positioned

beneath (*e.g.*, in a downhole direction) the first flow control device, between the upper and lower sections of the conduit, thereby forming a double-barrier usable to isolate the wellbore.

16. Embodiments usable within the scope of the Stimulation Patents relate to systems and methods usable to perform wellbore intervention operations (*e.g.*, chemical stimulation, tubular running, and/or other similar operations) without requiring removal, repositioning, and/or replacement of existing equipment to perform different operations, and in an embodiment, without requiring use of a rig or similar maneuvering equipment.

17. Conventional methods for performing chemical stimulation operations require use of a large rig to hoist risers into place and run these risers from a large vessel to the wellbore. After a chemical stimulation operation is performed, the required equipment must be removed and replaced with other equipment for performing additional intervention operations. Embodiments usable within the scope of the Stimulation Patents overcome these and other limitations of existing systems and methods.

18. Defendant has, and continues to, directly and/or indirectly infringe at least claims 1-2, 5, and 7-8 of the '808 patent, claims 1-4 and 11-12 of the '942 patent, and claims 1-4 and 11 of the '934 patent, either literally or under the doctrine of equivalents ("Asserted Claims of the Stimulation Patents"). Plaintiff reserves the right to assert additional patents and/or claims, arising from Defendant's conduct. A representative claim of a representative patent (the '942 patent) is set forth below:

> [**Claim 1 – '942 patent**]  A system for performing operations on a well, the system comprising:
>
> a conduit having an upper section and a lower section;
>
> a first flow control device positioned between the upper section and the lower section;

      a second flow control device positioned beneath the first control device and between the upper section and the lower section; and

      an upper connector assembly engaged with the upper section, wherein the upper connector assembly comprises:

      a first flow cross member in fluid communication with the first flow control device via the conduit, wherein the first flow cross member enables fluid flow in at least two directions;

      a first connector connected to a chemical stimulation device and having a first passage into the first flow cross member; and

      a top connector connected to a blowout preventer, a well intervention apparatus, or combinations thereof, and having a top passage between the BOP and the first flow cross member,

      wherein the conduit, the first passage and the top passage are operable to remain open at the same to time to perform simultaneous or combined operations performed using the chemical stimulation device, the blowout preventer, the well intervention apparatus, or combinations thereof.

19. Since at least 2016, Defendant has offered the Trident Modular Intervention System (now marketed in three variations: the Hydraulic Intervention System, the Riserless Light Well Intervention System, and the Open-Water Intervention Riser System, referred to collectively herein as the "Trident Systems"). A brochure from Defendant advertising the Trident Systems is attached as Exhibit F.

20. Defendant continues to market the Trident Systems. Recent photographs from 2024 trade shows advertising the Trident Systems are attached as Exhibit G.

21. Each and every limitation of the Asserted Claims of the Stimulation Patents are present, either literally or under the doctrine of equivalents, in the Trident Systems. Plaintiff includes the following comparison chart between the representative claim of the '942 patent and the Trident Systems, as described in Exhibits F-G and annotated by Plaintiff in red:

| U.S. Patent No. 10,053,942 ||
| **Claim Element** | **Location of Element in Trendsetter's System** |
|---|---|
| [1] A system for performing operations on a well, the system comprising: | Trendsetter's new TRIDENT series of subsea well intervention systems has been designed from the tree interface up to provide a cost effective and operationally robust solution for the next evolution of well intervention needs and in compliance with the latest industry standards.<br>Ex. G at 1. |
| | Annotated drawing from Ex. G at 2. (labeled: Side Connector, Upper Connector Assembly, Top Connector, First Passage, Top Passage, First Flow Control Device, Upper Section, Conduit, Lower Section, Upper Flow Cross Member, Second Flow Control Device) |
| [1a] a conduit having an upper section and a lower section; | **a conduit having an upper section and a lower section** – see annotated drawing from Ex. G |
| [1b] a first flow control device positioned between the upper section and the lower section; | **a first flow control device positioned between the upper section and the lower section** – see annotated drawing from Ex. G |
| [1c] a second flow control device positioned beneath the first control device and between the upper section and the lower section; and | **a second flow control device positioned beneath the first control device and between the upper section and the lower section** – see annotated drawing from Ex. G |

| | |
|---|---|
| **[1d]** an upper connector assembly engaged with the upper section, wherein the upper connector assembly comprises: | **an upper connector assembly engaged with the upper section** – see annotated drawing from Ex. G |
| **[1e]** a first flow cross member in fluid communication with the first flow control device via the conduit, wherein the first flow cross member enables fluid flow in at least two directions; | **a first flow cross member in fluid communication with the first flow control device via the conduit** – see annotated drawing from Ex. G **wherein the first flow cross member enables fluid flow in at least two directions** – the flow cross member is referred to as a "crossover" valve in Ex. G |
| **[1f]** a first connector connected to a chemical stimulation device and having a first passage into the first flow cross member; and | **a first connector connected to a chemical stimulation device and having a first passage into the first flow cross member** – see annotated drawing from Ex. G |
| **[1g]** a top connector connected to a blowout preventer, a well intervention apparatus, or combinations thereof, and having a top passage between the BOP and the first flow cross member, | **a top connector connected to a blowout preventer, a well intervention apparatus, or combinations thereof** – see annotated drawing from Ex. G **and having a top passage between the BOP and the first flow cross member** – see annotated drawing from Ex. G |
| **[1h]** wherein the conduit, the first passage and the top passage are operable to remain open at the same time to perform simultaneous or combined operations performed using the chemical stimulation device, the blowout preventer, the well intervention apparatus, or combinations thereof. | **wherein the conduit, the first passage and the top passage are operable to remain open at the same to time to perform simultaneous or combined operations performed using the chemical stimulation device, the blowout preventer, the well intervention apparatus, or combinations thereof** – As the device is structurally equivalent to the claim, it inherently enables the same simultaneous operational capability. |

22.     Plaintiff will provide its Preliminary Infringement Contentions for the remainder of the Asserted Claims, pursuant to Local Patent Rules 3.1 and 3.2, in accordance with the Court's Docket Control Order. As these Infringement Contentions will be limited to public documents, Plaintiff reserves the right to supplement or alter these Infringement Contentions in view of additional evidence, including discovery and expert opinions.

**TRENDSETTER'S DIRECT AND INDIRECT INFRINGEMENT OF THE HYDRATE PATENTS**

23. The Hydrate Patents cover, generally, methods of acting on or removing blockages from subsea fluid sources by using a motor, pump, and subsea separator to depressurize and/or dewater pipelines, or equivalent structures. In petroleum production, oil and its byproducts are typically removed from wells and transported through pipelines, including subsea pipelines. The flow of oil and other fluids through a subsea pipeline can lead to the build-up of gas hydrates, where an aqueous phase is present during the transportation of fluids, including gases. This is a common problem, especially in low temperature, high pressure conditions where such hydrates crystallize into pipeline blockages.

24. The Hydrate Patents claim an invention comprising a motor, pump, and separator, which when configured in the claimed way, may be used in subsea operations, such as deep water or ultra deep water operations, to transfer fluids in activities such as hydrate recovery or remediation, pipeline abandonments, dewatering pipelines, subsea well kill operations, well draw downs, and for flushing subsea pipelines by increasing the flow rate of fluid to the surface of the water through depressurization of the separator and pipeline.

25. During hydrate remediation operations, the system is connected to a subsea terminal (or intermediate outlet) of a pipeline. The separator may be installed along the seafloor as a separate free-standing component of the system, housed within framework for supporting the separator on the seafloor. In an alternative embodiment, the separator and frame may be stacked atop a skid. This stacking may occur in advance, or both components may be installed subsea. The motors act as prime movers for the corresponding pump, which pulls a vacuum on the pipeline, resulting in the flow of pipeline fluids and hydrates into the separator.

26. Trendsetter advertises a "Hydrate Remediation Unit"; a true and correct copy of one such ad is attached as Exhibit H (Hydrate Remediation Unit Brochure). This brochure explicitly identifies the Hydrate Remediation Unit as a subtype of Trendsetter's STIM (Subsea Tree Injection Manifold), first by referring to it as "Trendsetter's field-proven 15K STIM or Hydrate Remediation Units" and then by identifying the Hydrate Remediation Unit as "the most concentrated version of the STIM System [link omitted] to date." This Trendsetter brochure also advertises that Trendsetter's Hydrate Remediation Unit is related to U.S. Patent No. 10,273,785 ("the '785 patent"), a true and correct copy of which is attached as Exhibit I.

27. Trendsetter first offered the Hydrate Remediation Unit under the name of "FTO Services," a joint venture with several other companies. In the course of an unrelated dispute between its partners over inventorship of the '785 patent[1], several documents relating to the Hydrate Remediation Unit were made public. These include an "Operations Procedure" (a true and correct copy of which is attached as Exhibit J) a "Project Close-Out Report" (a true and correct copy of which is attached as Exhibit K), and a schematic for a "Flowline Hydrate Remediation System P&ID" (a true and correct copy of which is attached as Exhibit L).

28. These documents offer additional details regarding the configuration and use of Trendsetter's Hydrate Remediation Unit, which was not elaborated in the Hydrate Remediation Brochure or the '785 patent. Specifically, while Exhibit K references the use of a surface separator, Exhibit L clearly indicates the presence of a subsea separator as part of the remediation skid, and Exhibit J indicates the use of baffles (pages 8 and 26-27), which are commonly used in the art for separating gas from liquid.

---

[1] *C-Innovation, LLC v. Trendsetter Eng'g, Inc.*, No. 2:20-cv-02631 (E.D. La. 2020)

**PLAINTIFF'S ORIGINAL COMPLAINT**
U.S. District Court for the Southern District of Texas – Houston Division

29. Furthermore, it is well-established that a manifold of the type described in the '785 patent and Exhibits J-L can function as a separator, depending on the actuation and configuration of the valves in the manifold. An indication of this can be found in the nitrogen purge procedure described in Exhibit J, in which the nitrogen lifting gas is separated from seawater during the initial "Hook Up & Purge" phases, described on pages 24-25 of Exhibit J.

30. On information and belief, Defendant continues to market its infringing products and/or offer infringing services described in Exhibits J-L under the "STIM" umbrella. A recent post from Defendants noting the use of STIM for a subsea hydrate remediation job in the Gulf of Mexico is attached as Exhibit M.

31. On information and belief, therefore, Defendant is, and continues to, directly and/or indirectly infringe at least claims 4, 6-7, and 9 of the '185 patent and claim 10 of the '238 patent, either literally or under the doctrine of equivalents ("Asserted Claims of the Hydrate Patents"). A representative claim of a representative patent (the '238 patent) is set forth below:

> [**Claim 10 – '238 patent**] A system for transporting fluid in a subsea environment to a surface of a body of water, comprising:
>
> a pump configured to pump fluid;
>
> a separator in fluid communication with the pump, wherein the separator is connected to the pump with a first fluid conduit; and
>
> a pipeline conduit connecting the separator with a subsea fluid source consisting of a pipeline, a pipeline end termination, a producing well, a pipeline and a pipeline end termination, or a pipeline and a producing well, wherein the subsea fluid source comprises a fluid comprising a blockage, wherein the pump is configured to decrease pressure in the first fluid conduit, the separator and the pipeline conduit to act on or remove the blockage to result in a flow or an increased flow of the fluid, wherein the fluid having the blockage acted on or removed is drawn from the subsea fluid source into the pipeline conduit to the separator, wherein the separator receives the fluid having the blockage acted on or removed and separates or vents gas from the fluid having the blockage acted on or removed to form a

separated fluid, and wherein the pump moves the separated fluid to the surface of the body of water through a second fluid conduit.

32. Each and every limitation of the Asserted Claims of the Hydrate Patents are present, either literally or under the doctrine of equivalents, in Trendsetter's Trident Systems. Plaintiff includes the following comparison chart between the representative claim of the '238 patent and the Trident Systems, as described in Exhibits J-L and annotated by Plaintiff in red:

| U.S. Patent No. 10,161,238 ||
|---|---|
| **Claim Element** | **Location of Element in Trendsetter's System** |
| **[10]** A system for transporting fluid in a subsea environment to a surface of a body of water, comprising: | Annotated drawing from Ex. L |
| **[10a]** a pump configured to pump fluid; | **a pump configured to pump fluid** – see annotated drawing from Ex. N; references to subsea pump in Ex. J at 11, |
| **[10b]** a separator in fluid communication with the pump, wherein the separator is connected to the pump with a first fluid conduit; and | **a separator in fluid communication with the pump** – see annotated drawing from Ex. L<br><br>**wherein the separator is connected to the pump with a first fluid conduit** – see annotated drawing from Ex. L |
| **[10c]** a pipeline conduit connecting the separator with a subsea fluid source consisting of a pipeline, a pipeline end termination, a producing well, a pipeline and a pipeline end | **a pipeline conduit connecting the separator with a subsea fluid source consisting of a pipeline, a pipeline end termination, a producing well, a pipeline and a pipeline end termination, or a pipeline and a producing well** – see reference to pipeline end terminators in Ex. J at 11. |

| | |
|---|---|
| termination, or a pipeline and a producing well, wherein the subsea fluid source comprises a fluid comprising a blockage, wherein the pump is configured to decrease pressure in the first fluid conduit, the separator and the pipeline conduit to act on or remove the blockage to result in a flow or an increased flow of the fluid, | **wherein the subsea fluid source comprises a fluid comprising a blockage** – See Ex. J at p. 27.<br><br>**wherein the pump is configured to decrease pressure in the first fluid conduit, the separator and the pipeline conduit to act on or remove the blockage to result in a flow or an increased flow of the fluid** – Ex. K at 11 ("creation of a low pressure environment in the system to which the flowline could be opened to recover liquid and gas contents") |
| **[10d]** wherein the fluid having the blockage acted on or removed is drawn from the subsea fluid source into the pipeline conduit to the separator, wherein the separator receives the fluid having the blockage acted on or removed and separates or vents gas from the fluid having the blockage acted on or removed to form a separated fluid, and wherein the pump moves the separated fluid to the surface of the body of water through a second fluid conduit. | **wherein the fluid having the blockage acted on or removed is drawn from the subsea fluid source into the pipeline conduit to the separator** – see annotated drawing from Ex. L<br><br>**wherein the separator receives the fluid having the blockage acted on or removed and separates or vents gas from the fluid having the blockage acted on or removed to form a separated fluid** – see annotated drawing from Ex. L, esp. internal baffle structure.<br><br>**and wherein the pump moves the separated fluid to the surface of the body of water through a second fluid conduit** – see annotated drawing from Ex. L |

33. Plaintiff will provide its Preliminary Infringement Contentions for the remainder of the Asserted Claims, pursuant to Local Patent Rules 3.1 and 3.2, in accordance with the Court's Docket Control Order. As these Infringement Contentions will be limited to public documents, Plaintiff reserves the right to supplement or alter these Infringement Contentions in view of additional evidence, including discovery and expert opinions.

## IV. CAUSES OF ACTION

### COUNT I – PATENT INFRINGEMENT OF THE STIMULATION PATENTS

34. Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

35. As specifically set forth in paragraphs 14-21, *supra*, Trendsetter has, and continues to, directly infringe the Asserted Claims of Plaintiff's Stimulation Patents by making, using, offering for sale and/or selling within the United States, products and/or methods covered by the claimed inventions of the Asserted Claims of Plaintiff's Stimulation Patents, pursuant to 35 U.S.C. § 271(a), Specifically, Trendsetter has promoted, through website advertisement, its Trident Modular Intervention System that is covered by one or more of the Asserted Claims of Plaintiff's Stimulation Patents. On information and belief, Trendsetter has been making, using, selling, and offering for sale products based upon the same content detailed in Exhibits F-G.

36. In addition, or alternatively, Defendant has, and continues to, indirectly infringe the Asserted Claims of Plaintiff's Stimulation Patents by inducing or contributing to the manufacture, use, sale, and/or offer for sale of the claimed inventions of the Asserted Claims of the Stimulation Patents by Trendsetter's customers or potential customers in Texas, or elsewhere, which have directly infringed the Asserted Claims of the Stimulation Patents, pursuant to 35 U.S.C. § 271(b) and/or (c).

37. On information and belief, Trendsetter's Trident Systems have no substantial non-infringing use, or were supplied or provided by Trendsetter with knowledge that the same was made, adapted, configured, used or to be used to infringe the Asserted Claims of the Stimulation Patents.

38. Upon information and belief, Trendsetter's infringing activities have been willful, and this is an exceptional case.

39. As a result of the willful and deliberate nature of Trendsetter's infringing activities, Plaintiff is entitled to enhanced damages and is entitled to recover attorneys' fees and costs. 35 U.S.C. § 284-285.

### COUNT II– PATENT INFRINGEMENT OF THE HYDRATE PATENTS

40. Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

41. As specifically set forth in paragraphs 22-34, supra, Trendsetter has, and continues to, directly infringe the Asserted Claims of Plaintiff's Hydrate Patents by making, using, offering for sale and/or selling within the United States, products and/or methods covered by the claimed inventions of the Asserted Claims of Plaintiff's Hydrate Patents, pursuant to 35 U.S.C. § 271(a). Specifically, Trendsetter has promoted, through website advertisement, at least its Hydrate Remediation Unit, and configurations of its broader STIM system inclusive of same, which are covered by one or more of the Asserted Claims of Plaintiff's Hydrate Patents. On information and belief, Trendsetter has been making, using, selling, and/or offering for sale products based upon the same content detailed in Exhibits H-M.

42. In addition, or alternatively, Defendant has, and continues to, indirectly infringe the Asserted Claims of the Hydrate Patents by inducing or contributing to the manufacture, use, sale, and/or offer for sale of the claimed inventions of the Asserted Claims of the Hydrate Patents by Trendsetter's customers or potential customers in Texas, or elsewhere, which have directly infringed the Asserted Claims of the Hydrate Patents, pursuant to 35 U.S.C. § 271(b) and/or (c).

43. On information and belief, Trendsetter's Hydrate Remediation Unit has no substantial non-infringing use or was supplied or provided by Trendsetter with knowledge that the same was made, adapted, configured, used, or to be used so as to infringe the Asserted Claims of the Hydrate Patents.

44. Upon information and belief, Trendsetter's infringing activities have been willful, and this is an exceptional case.

45. As a result of the willful and deliberate nature of Trendsetter's infringing activities, Plaintiff is entitled to enhanced damages and is entitled to recover attorneys' fees and costs. 35 U.S.C. § 284-285.

## V.     JURY DEMAND

46. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues and claims so triable.

## VI.     PRAYER FOR RELIEF

47. WHEREFORE, Plaintiff prays for judgment and seeks the following relief:

   a) judgment in Plaintiff's favor that Trendsetter's Trident Modular Intervention System has directly infringed, either literally and/or by the doctrine of equivalents, and continues to directly infringe, the Asserted Claims of the Stimulation Patents;

   b) judgment in Plaintiff's favor that Trendsetter has, additionally or alternatively, induced infringement and continues to induce infringement of the Asserted Claims of the Stimulation Patents;

c) judgment in Plaintiff's favor that Trendsetter has, additionally or alternatively, contributorily infringed and continues to contributorily infringe the Asserted Claims of the Stimulation Patents;

d) judgment in Plaintiff's favor that Trendsetter's Hydrate Remediation Unit has directly infringed, either literally and/or by the doctrine of equivalents, and continues to directly infringe, the Asserted Claims of the Hydrate Patents;

e) judgment in Plaintiff's favor that Trendsetter has, additionally or alternatively, induced infringement and continues to induce infringement of the Asserted Claims of the Hydrate Patents;

f) judgment in Plaintiff's favor that Trendsetter has, additionally or alternatively, contributorily infringed and continues to contributorily infringe the Asserted Claims of the Hydrate Patents;

g) judgment and an order requiring Trendsetter to pay Plaintiff its past and future damages, costs, expenses, pre-judgment interest, and post-judgment interest for Trendsetter's infringement, as provided under 35 U.S.C. § 284;

h) judgement and order that Trendsetter's infringement has been willful under 35 U.S.C. § 284;

i) judgment and an order that this case is exceptional under 35 U.S.C. § 285 and requiring Trendsetter to pay Plaintiff's reasonable attorneys' fees; and

j) for any such other and further relief as the Court may deem just and proper.

DATED: February 21, 2025　　　　　　　　RESPECTFULLY SUBMITTED,

　　　　　　　　　　　　　　　　　　　　*/s/ Terry Joseph*　　　　　　
　　　　　　　　　　　　　　　　　　　　Terry Joseph (Lead Attorney)
　　　　　　　　　　　　　　　　　　　　TX Bar No. 11029500
　　　　　　　　　　　　　　　　　　　　Matthew Evans
　　　　　　　　　　　　　　　　　　　　TX Bar No. 24132493
　　　　　　　　　　　　　　　　　　　　McCutcheon Joseph, PLLC
　　　　　　　　　　　　　　　　　　　　5444 Westheimer Rd., Suite 1950
　　　　　　　　　　　　　　　　　　　　Houston, Texas 77057
　　　　　　　　　　　　　　　　　　　　TEL: (713) 355-4200
　　　　　　　　　　　　　　　　　　　　FAX: (713) 355-9689
　　　　　　　　　　　　　　　　　　　　tjoseph@mccutcheonjoseph.com
　　　　　　　　　　　　　　　　　　　　mevans@mccutcheonjoseph.com

　　　　　　　　　　　　　　　　　　　　COUNSEL FOR PLAINTIFF WRIGHT'S IP HOLDINGS LLC